UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| B.H., Next Friend and mother of K.H., a minor, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:08-cv-293 |
| v. | ) ) | Honorable Joseph G. Scoville |
| PORTAGE PUBLIC SCHOOL BOARD OF EDUCATION, et al., | ) ) ) | **OPINION** |
| Defendants. | ) ) ) | |

This is a civil action brought by the parents of a minor, K.H., against the Portage

Public School Board of Education and two school district employees.  Plaintiffs, suing on their own

behalf and as Next Friend for their minor daughter, bring federal claims under 42 U.S.C. § 1983 for

abridgement of First and Fourteenth Amendment rights, claims under Title IX of the Education

Amendments of 1972, 20 U.S.C. §§ 1681-1688, and claims of discrimination and retaliation under

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.  Plaintiffs bring pendent state claims

under analogous Michigan civil rights laws.  The allegations in plaintiffs' complaint span the period

from the 2001-02 school year, during which K.H. was a fifth grader in the Portage Public Schools,

through the 2005-06 school year, when K.H. was removed by her parents from the Portage Schools.

The gravamen of plaintiffs' complaint is that defendants steadfastly ignored K.H.'s need for

accommodations arising from her disabilities, discriminated against her on account of her

disabilities, failed to adhere to the procedures required by section 504, and retaliated against K.H.

and her parents when they began to complain about the school district's inadequate educational response to K.H.'s needs.

This matter came before the court[1] on defendants' motion for partial dismissal. At a hearing conducted on January 9, 2009, the court adjudicated all aspects of defendants' motion for partial dismissal except their assertion that plaintiffs' claims under section 504 should be dismissed for failure to exhaust administrative remedies. The court took the matter under advisement and allowed plaintiffs an opportunity to file a further brief addressed to the exhaustion issue. The court now concludes that plaintiffs' discrimination claims under section 504 must be dismissed for failure to exhaust remedies as required by 20 U.S.C. § 1415(l).

## Relevant Allegations in Complaint

Plaintiffs have submitted a long and detailed complaint, chronicling events that occurred in 1993, continuing through K.H.'s attendance of elementary and middle school in the Portage School District, and ending with her parents' decision in February 2006 to enroll her in the East Grand Rapids public schools. It is not necessary to review these allegations in detail. For purposes of the pending motion, it is important for the court only to accurately summarize the nature of plaintiffs' claims under section 504 and their efforts to bring administrative proceedings before filing suit.

In summary, plaintiffs' claims under section 504 are based upon the following series of allegations. From 1993 through 1997, K.H. suffered emotional trauma and post-traumatic stress syndrome arising from abuse not related to the school system. She was diagnosed with ADHD in

---

[1] The parties have consented to the dispositive jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (*See* Order of Reference, docket # 10).

-2-

1999.  (Compl. ¶¶ 14-19).  Her parents advised teachers of K.H.'s psychological needs and her diagnosis of ADHD repeatedly from 2001 through 2004.  (Compl. ¶¶ 21, 22, 26-29, 34-36, 38, 44). School district personnel ignored this information and failed to evaluate K.H. or accommodate her disabilities.  Additionally, the complaint alleges that the district violated its affirmative duty to identify K.H. as a student suffering from disability who required educational accommodation.  When K.H.'s parents ultimately demanded an evaluation, the section 504 team found K.H. ineligible, but defendants failed to afford them the required procedural safeguards, including an administrative hearing.  The complaint alleges that K.H. was excluded from school and extracurricular activities and suffered discrimination on account of her disability.  In count VII of the complaint, which is specifically directed to violations of section 504 of the Rehabilitation Act, plaintiffs allege that by reason of her disabilities, K.H. was unable to benefit from the program operated by the Portage schools without appropriate accommodations.  (Compl. ¶ 307).  In count VIII, they assert that defendants retaliated against plaintiffs in a number of decisions regarding K.H.'s educational and extracurricular opportunities in violation of the anti-retaliation provisions of the section 504 regulations.

        The complaint contains some allegations concerning exhaustion of remedies.  In early February 2005, when K.H. was in eighth grade, she was excluded from participating in volleyball, a middle school extracurricular sport.  (Compl. ¶¶ 66, 83, 84).  Her parents protested, and a meeting was held on March 23, 2005.  (Compl. ¶¶ 184-201).  At the meeting, the section 504 process was discussed with K.H.'s parents, and school officials provided them with a section 504 referral form and other documents relating to their procedural rights.  (Compl. ¶¶ 197-200).  School officials conducted a section 504 planning meeting on May 11, 2005.  (Compl. ¶ 239).  Upon review of

K.H.'s educational performance, school officials determined that K.H. was ineligible for section 504 services, because she did not suffer from any substantial limitation of a major life activity. (Compl. ¶ 240). On May 20, 2005, K.H.'s parents sent the school superintendent a written demand for a section 504 hearing. This letter also invoked the procedures under the Individuals With Disabilities Education Act (IDEA), including a demand for a publicly funded Independent Educational Evaluation. (Compl. ¶¶ 247-250; Def. Ex. C)..

Defendants have attached to their motion authenticated documentary evidence relating to the issue of exhaustion, which plaintiffs have not disputed. Those documents show that on May 25, 2005, plaintiffs sent the superintendent a letter requesting a section 504 hearing and requesting a comprehensive special education evaluation pursuant to the IDEA. (Def. Motion Ex. D). An evaluation process took place over the fall of the 2005-06 school year. In this connection, K.H.'s parents procured a private evaluation at their own expense. On November 28, 2005, plaintiffs' counsel invoked their right to a due-process hearing under the IDEA. Plaintiffs concede that the "sole issue" for which the hearing was requested was the parents' entitlement to reimbursement for the evaluation, and not the question whether K.H. had been denied a free, appropriate public education. (Plf. Brief, docket # 39, p. 8). On December 7, 2005, the special education hearings administrator acknowledged the demand for hearing and began the process for proceedings before a hearing officer. (*Id.* Ex. E). While the hearing process was underway, the school district convened an IEP team meeting under the IDEA. On January 12, 2006, the team submitted an individualized education program (IEP) report. (*Id.* Ex. G). In this report, K.H. was found eligible for special education and related services under the IDEA. Her parents signed the IEP report in disagreement, but specifically allowed it to be implemented. (*Id.*, p. 7). In light of the school district's recognition

that K.H. was entitled to special education services under the IDEA, the only issue for a hearing was the parents' claim for reimbursement for the cost of the private evaluation. The hearing officer entered an order of dismissal on June 23, 2006, by agreement of the parties. (*Id.* Ex. F).

After the close of the 2004-05 school year, K.H.'s parents removed her from the Portage Public Schools and enrolled her in the East Grand Rapids School District. (Compl. ¶ 262). It is undisputed that plaintiffs have not submitted any of the substantive or procedural claims in their complaint to the administrative process set forth in the IDEA.

## Discussion

### A.    Nature of Motion and Standard of Review

The only issue remaining before the court arising from defendants' motion for partial dismissal is whether plaintiffs' claims under section 504 of the Rehabilitation Act of 1973 should be dismissed because of plaintiffs' failure to exhaust administrative remedies under the IDEA, as required by 20 U.S.C. § 1415(l). The court notes at the outset that defendants brought their motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that plaintiffs' alleged failure to exhaust administrative remedies deprives the court of subject-matter jurisdiction. It is indeed true that older cases analyze a failure to exhaust administrative remedies as a jurisdictional bar. *See, e.g., Cudjoe ex rel. Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1063 (10th Cir. 2002). A recent decision of the Supreme Court of the United States, however, clarifies the nature of a motion to dismiss based on a failure to exhaust administrative remedies. In *Jones v. Bock*, 549 U.S. 199 (2007), the Court analyzed the provision of the Prison Litigation Reform Act that requires prisoners to exhaust prison grievance procedures before filing suit. 28 U.S.C. § 1915A. Many lower

-5-

courts, including the Sixth Circuit, had treated this provision as jurisdictional, requiring the plaintiff to allege and demonstrate exhaustion in his complaint.  The Court noted that the exhaustion requirement was expressly mandatory under the Act, but framed the question as whether "it falls to the prisoner to plead and demonstrate exhaustion in the complaint, or to the defendant to raise lack of exhaustion as an affirmative defense."  549 U.S. at 211.  The Court observed that courts typically regard exhaustion as an affirmative defense.  *Id.* at 212.  Relying on analogous cases decided in other contexts, the Court determined that the exhaustion requirement should be treated as an affirmative defense, with the burden to plead and prove the defense on the defendant.  *Id.* at 212-13.  The Court cautioned against reliance on perceived policy arguments for reading jurisdictional limitations into statutes in the absence of clear language in that regard.  *Id.* at 216-17.  In light of the analysis applied in *Jones v. Bock*, this court concludes that failure to exhaust administrative remedies in the present context is an affirmative defense, not a jurisdictional bar, and that defendants have the burden of raising and supporting the defense.  *See McQueen ex rel. McQueen v. Colorado Springs School Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007) (*Jones v. Bock* casts doubt on characterization of exhaustion requirement under section 1415(l) as jurisdictional).

As failure to exhaust is not a jurisdictional defect, a motion brought pursuant to Rule 12(b)(1) is not an appropriate vehicle by which to raise the issue.  The issue should be raised by motion for summary judgment.  In this context, however, the court sees no substantial difference between defendants' Rule 12(b)(1) motion and a motion for summary judgment.  A challenge to subject-matter jurisdiction may be a facial attack (based on the allegations in the complaint alone) or a factual attack (relying on matters outside the pleadings).  *See O'Bryan v. Holy See*, 549 F.3d 431, 446 (6th Cir. 2008).  In their brief, defendants made it clear that they were bringing a factual

attack based not only on the plaintiffs' complaint, but also on matters outside the record. Defendants' brief requested that the court make factual findings on the issue of exhaustion, as allowed by Sixth Circuit precedent under Rule 12(b)(1). (Brief, docket # 35, at 8 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325-26 (6th Cir. 1990)). Plaintiffs were therefore on notice that defendants were relying on matters outside the record. Rather than disputing defendants' factual assertions (which were based wholly upon documentary evidence generated during administrative proceedings and attached to the motion), plaintiffs elected not to contest defendants' factual assertions.[2] The court therefore perceives no surprise or unfairness in treating defendants' motion under section 12(b)(1) as seeking summary judgment under Rule 56.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and that the moving party is entitled to judgment on an issue as a matter of law. FED. R. CIV. P. 56(c); *see S.S. v. Eastern Ky. Univ.*, 532 F.3d 455, 452 (6th Cir. 2008). Where a moving party with the burden of proof seeks summary judgment, it faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W.

---

[2] The Federal Rules of Civil Procedure require that the court give notice to all parties before deciding to treat a motion to dismiss under Rule 12(b)(6) as a motion for summary judgment. *See* FED. R. CIV. P. 12(d). The rules contain no such requirement with regard to a motion ostensibly brought under Rule 12(b)(1).

SCHWARZER, *Summary Judgment Under the Federal Rules:  Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).  This higher standard applies in this case because exhaustion is an affirmative defense.

### B.    Statutory Exhaustion Requirement

Plaintiffs' claim in count VII is brought under section 504 of the Rehabilitation Act of 1973 and alleges that defendants deprived K.H. of appropriate accommodations and evaluations required by her disability, denied plaintiffs the right to a hearing to challenge educational decisions, and subjected her to discrimination.  Count VIII alleges violations of the anti-retaliation provision in the section 504 regulations.  34 C.F.R. § 100.7(e).  In an amended complaint (docket # 46), plaintiffs specify numerous acts of retaliation, including refusing to allow reasonable accommodation necessary to allow K.H. to play volleyball in March 2005 (¶ 346), segregation of K.H. in the Guidance Room without teacher assistance (¶ 349), refusal of a transfer request to another middle school (¶ 351), excluding K.H. from sports on academic grounds for a six-day period in 2005 (¶¶ 358-59), and failure to give K.H. credit for a science project (¶¶ 360-61).  All acts of alleged retaliation were related to the academic or extracurricular program of the School District.  Defendants seek dismissal of the section 504 claims for lack of exhaustion of administrative remedies.

Section 504 itself contains no exhaustion requirement.  The requirement of exhaustion of remedies, however, is found in a different statute, the IDEA.  The IDEA provides as follows:

> (l)     Rule of construction
>
> Nothing in this chapter shall be construed to restrict or limit the rights, procedures and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [ 29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).  Congress adopted this provision as part of the Handicapped Children's Protection Act of 1986, in response to the Supreme Court's opinion in *Smith v. Robinson*, 468 U.S. 992 (1983).  In *Smith*, the Court held that the Education of the Handicapped Act (EHA), which was the predecessor statute to the IDEA, was the sole remedy available to address an alleged failure to accommodate the needs of an individual handicapped child and that Congress intended the EHA as an exclusive avenue through which a child and his parents could pursue such a claim.  468 U.S. at 1012-13.  The Court therefore held that section 1983 claims and claims under section 504 of the Rehabilitation Act were precluded by the EHA.  Congress passed section 1415(l) in 1986 to change this result.  Section 1415(l) expressly preserves a plaintiff's right to seek relief under section 1983, section 504, and other federal civil rights laws, but it imposes upon such plaintiffs the duty to exhaust remedies under the IDEA "to the same extent as would be required had the action been brought under [the IDEA]."  Under section 1415(l), a plaintiff must exhaust applicable IDEA remedies as a prerequisite to bringing a section 504 claim, even where plaintiff has no intention of

bringing an IDEA claim.  *See S.E. v. Grant Co. Bd. of Educ.*, 544 F.3d 633, 641-43 (6th Cir. 2008);

*M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1158 (11th Cir. 2006) (any student seeking

relief available under the IDEA "must use the IDEA's administrative system, even if he invokes a

different statute.").

      Resolution of the issue now before the court requires some understanding of the

interrelationship between the IDEA and section 504.  The IDEA and section 504 are similar, but not

identical statutes.  Section 504 is essentially a nondiscrimination provision applicable to all federally

funded programs.  It provides as follows:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).  Section 504 therefore protects handicapped persons from discrimination in a

variety of programs and activities receiving federal financial assistance.  Because every state receives

federal money to operate its public education system, section 504 applies to public elementary and

secondary education programs.  The federal regulations implementing section 504 (34 C.F.R. Part

104) require that students with disabilities have equal access to public schools and that they receive

a "free appropriate public education" (FAPE) regardless of the nature or severity of their disabilities.

34 C.F.R. § 104.33.  Section 504 applies to all students who have mental or physical impairments,

who have a record of physical or mental impairments, or who are regarded as having a mental or

physical impairment, if the impairment substantially limits one or more major life activities.  Under

the regulations, a school district has an affirmative duty to identify, locate, and evaluate all children

with disabilities.  34 C.F.R. §§ 104.32, .35.  This duty is often referred to as the "child find" obligation.

The IDEA is specific to education.  It makes funds available to states for special education on the condition that states implement policies assuring a "free appropriate public education" for all handicapped children.  20 U.S.C. § 1412(a).  The primary mechanism for assuring a FAPE is the development of a detailed, individualized instruction plan known as an individualized education program (IEP).  20 U.S.C. §§ 1401(14), 1414.  The IDEA imposes its own "child find" obligations upon school districts to identify, locate and evaluate children with a disability who need special education services.  34 C.F.R. § 300.111(a)(1); *see Board of Educ. v. Fayette County, Ky. v. L.M.*, 478 F.3d 307, 313 (6th Cir. 2007).

Although both statutes require the states to provide disabled children with a FAPE and impose child find obligations, the statutes are not identical in their effect.  A principal difference between section 504 and the IDEA relates to the specific students covered by the statutes.  Section 504 applies to an individual with a disability as defined in 29 U.S.C. § 705(20)(B), but the IDEA limits its protection to children who have one of the specific disabilities listed in the statute and who need special education and related services as a result of that disability.  Consequently, the universe of students eligible for IDEA protection is a subsection of the group eligible for protection under section 504.  *See Weber v. Cranston Pub. Sch. Comm.*, 245 F. Supp. 2d 401, 406 (D.R.I. 2003) ("[§ 504] is a bludgeon to the IDEA's stiletto, protecting a broader swath of the population without describing a precise manner of compliance.").  Furthermore, although both statutes require the state to provide students with a FAPE, the requirements are not identical.  As the Ninth Circuit recently noted, "FAPE under the IDEA and FAPE as defined in the section 504 regulations are similar but

-11-

not identical." *Mark H. v. Lemahieu*, 513 F.3d 922, 933 (9th Cir. 2008).  The regulations provide that adopting an IEP sufficient to satisfy the IDEA will also satisfy the FAPE requirements of section 504.  *Id.* (citing 34 C.F.R. §§ 104.33(b)(2), 104.36).

The last difference between the statutes relevant to the present case is that the IDEA, unlike section 504, contains an elaborate procedural mechanism designed to vindicate the statute's substantive grant of rights.  These procedures, which include the generation of an IEP, administrative fact-finding, a due-process hearing before an impartial administrative law judge, and review in the district court "ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provisions of a free appropriate public education by such agencies."  20 U.S.C. § 1415(a).  The federal courts have long held that this statutory scheme imposes a requirement for the exhaustion of administrative remedies before a claimant may bring an IDEA action in the federal courts.  *See, e.g., Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989).  The Sixth Circuit has explained the policies underlying the exhaustion requirement.

> The policies underlying this exhaustion requirement are both sound and important.  States are given the power to place themselves in compliance with the law, and the incentive to develop a regular system for fairly resolving conflicts under the Act.  Federal courts -- generalists with no expertise in the educational needs of handicapped students -- are given the benefit of expert factfinding by a state agency devoted to this very purpose.  Such a mechanism is necessary to give effect to a fundamental policy underlying the EHA [now the IDEA]: that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education.  Were federal courts to set themselves up as the initial arbiters of handicapped children's educational needs before the administrative process is used, they would endanger not only the procedural but the substantive purposes of the Act.  And both states and the federal government have a recognized interest in providing enforcement of the Act that is not only just but efficient.

*Crocker*, 873 F.2d at 935 (citation and internal quotation omitted).

As noted above, by virtue of 20 U.S.C. § 1415(l), a plaintiff must exhaust the same remedies under the IDEA as a prerequisite to bringing an action under *any* federal civil rights statute, including a claim under section 504, as long as plaintiff is seeking relief available under the IDEA. The extensive administrative framework of the IDEA allows parents to present complaints "with respect to any matter relating to the identification, evaluation, or placement of a child, or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6)(A). In the present case, plaintiffs cannot seriously contend that they exhausted administrative remedies with regard to any of their claims under section 504, all of which relate to the "identification, evaluation and placement" of K.H. Plaintiffs contend that defendants violated their procedural obligations under the "child find" provisions of the section 504 regulations by failing to identify K.H. as a child with a disability. Plaintiffs further allege violations of the substantive requirements of section 504 arising from the School District's failure to provide K.H. with a FAPE, including failure to accommodate her disabilities. Plaintiffs also allege that defendants retaliated against them for their assertion of rights under section 504. It is well settled that all types of claims under section 504, including claims for retaliation brought by students and their parents, are subject to the exhaustion requirement of section 1415(l). *See M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1157-59 (11th Cir. 2006); *Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 49-53 (1st Cir. 2000); *Rose v. Yeaw*, 214 F.3d 206, 210 (1st Cir. 2000); *Loch v. Bd. of Educ. of Edwardsville Cmty. Sch. Dist. No. 7*, 573 F. Supp. 2d 1072, 1082 (S.D. Ill. 2008). The record discloses that plaintiffs have not pursued any administrative remedies with regard to any of their claims. The only administrative proceeding initiated by plaintiffs was on

a narrow question of reimbursement for an evaluation under the IDEA, and that claim was eventually dismissed by agreement.

Plaintiffs argue, however, that they fall within exceptions to the exhaustion requirement. The Sixth Circuit recognizes two principal exceptions. First, exhaustion is excused if administrative remedies would be "futile or inadequate to protect" the rights and interests of the disabled child and her parents. *See Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000). Second, exhaustion is excused if plaintiffs "were not given full notice of their procedural rights" under the IDEA. *Id.* The court considers each exception in turn.

### C.  Futility

The standard for establishing futility is "very high," and plaintiffs bear the burden of establishing an exception to the statutory exhaustion requirement. *Ruecker v. Sommer*, 567 F. Supp. 2d 1276, 1291 (D. Ore. 2008); *accord Gean v. Hattaway*, 330 F.3d 758, 773-74 (6th Cir. 2003). The futility exception arises from the language of the IDEA itself, which limits the exhaustion requirement to cases where the plaintiff "seek[s] relief that is also available" under the IDEA. 20 U.S.C. § 1415(l).

The Sixth Circuit articulated the test for determining whether exhaustion of IDEA remedies by a section 504 plaintiff would be futile in the recent case of *S.E. v. Grant County Board of Education*, 544 F.3d 633 (6th Cir. 2008). In that case, parents brought suit against school officials alleging that the investigation that led to the child's placement in a juvenile diversion program violated her federal rights, including the right to be free from discrimination under section 504 of the Rehabilitation Act of 1973. With regard to the section 504 claim, the parents alleged that the

school officials "routinely, consistently, and purposely failed to implement the components" of a section 504 plan and that they were improperly denied a due-process hearing with regard to the child's educational placement.  544 F.3d at 642.  There, as here, the parents argued that exhaustion of IDEA remedies would be futile, both because the child had been removed from the school district in favor of home schooling and because the administrative process could not address the plaintiffs' alleged injuries.  In rejecting the claim of futility, the Sixth Circuit adopted the test enunciated by the Ninth Circuit and followed by a majority of the federal appellate courts.  Quoting *Robb v. Bethel School District # 403*, 308 F.3d 1047, 1048 (9th Cir. 2002), the Sixth Circuit held that "when a plaintiff has alleged injuries that could be addressed *to any degree* by the IDEA's administrative procedures and remedies, exhaustion of those remedies is required."  544 F.3d at 642 (emphasis added).  Noting that plaintiffs' claims "will require an assessment of whether the actions complained of here improperly excluded her from or denied her the benefits of the education to which she was entitled, or subjected her to improper discrimination on account of her disability," the court determined that exhaustion of IDEA remedies would not be futile.  The court further noted that a developed record made by educational professionals would assist the district court in making a reasoned decision concerning the educational claims made by plaintiffs.  *Id.* at 643.  On this basis, the court affirmed the lower court's dismissal of the section 504 claims without prejudice for lack of exhaustion.[3]

_____

[3] In addition, relying on settled Sixth Circuit authority, the court rejected the argument that exhaustion can be rendered futile by the parents' decision to remove their child from the school district.  "Parents may not avoid the state administrative process through the unilateral act of removing their child from a public school."  544 F.3d at 642 n.9 (quoting *Covington*, 205 F.3d at 918).

As indicated, the Sixth Circuit's decision in *Grant County Board of Education* comports with the majority rule in this country. For purposes of exhaustion, "relief that is also available" under the IDEA does not necessarily mean relief that fully satisfies the aggrieved party. Rather, it means relief "suitable to remedy the wrong done the plaintiff, which may not always be relief in the precise form the plaintiff prefers." *Robb*, 308 F.3d at 1049. The federal courts require a plaintiff to exhaust IDEA remedies as a prerequisite to bringing claims under another federal statute where a student's injury could be redressed "to any degree" by the IDEA's administrative procedures. *See Kutasi v. Las Virgenes Unified Sch. Dist.*, 494 F.3d 1162, 1168 (9th Cir. 2007). The focus is not on the relief that plaintiff actually seeks, but on the "source and nature of the alleged injuries for which he or she seeks a remedy." *Robb*, 308 F.3d at 1050. Therefore, the mere fact that a plaintiff seeks an award of damages that may be unavailable in IDEA administrative proceedings is irrelevant. *See Grant County*, 544 F.3d at 642; *Covington*, 205 F.3d at 916. The dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. 544 F.3d at 642. Relief is available under the IDEA when both the "genesis and the manifestations of the problem are educational." *Charlie F. ex rel. Neil F. v. Bd. of Educ. of Skokie Sch. Dist.*, 98 F.3d 989, 993 (7th Cir. 1996). Furthermore, the Sixth Circuit has made it clear that the IDEA administrative process remains available and beneficial to remedy procedural violations, and specifically violation of the district's child-find obligation, and that administrative relief may be awarded to address such violations. *Bd. of Educ. of Fayette County v. L.M.*, 478 F.3d 307, 313-18 (6th Cir. 2007). Exhaustion is futile only if plaintiff's injuries are "completely non-educational." *Blanchard v. Morton Sch. Dist.*, 420 F.3d 918, 921 (9th Cir. 2005).

-16-

Here, plaintiffs' claims revolve around the deprivation of a FAPE, defendants' alleged failure to comply with their child find obligations, and defendants' acts of alleged retaliation regarding K.H.'s participation in school and extracurricular activities. These are precisely the types of fact-intensive inquiries that the administrative process was designed to address. Far from being "completely non-educational," the "genesis and manifestations" of the problems alleged in the complaint are completely educational. It is certainly true, as plaintiffs suggest, that the procedures and remedies under section 504 and those under IDEA are not identical. This, however, is beside the point. Section 1415(l) obliges a federal civil rights claimant to at least *try* to seek redress for her educational injuries by pursuing the IDEA administrative process. If she does so, and is found qualified for special education services under IDEA, the process and services received under IDEA will, as a matter of law, satisfy certain of the school district's obligations under section 504. *See* 34 C.F.R. §§ 104.33(b)(2), 104.36. If relief under IDEA proves to be unavailable or inadequate, plaintiff has satisfied her exhaustion requirement and may still pursue relief under section 1983, the ADA, section 504, or whatever other civil rights act may afford relief. What a plaintiff may not do is ignore the IDEA process altogether and apply directly to the district court, relying on the argument that the pretermitted IDEA remedy *might* not have been adequate. *See Babicz v. School Bd. of Broward County*, 135 F.3d 1420, 1422 n.10 (11th Cir. 1998) (section 504 plaintiff must pursue IDEA remedies despite lack of precise equivalence in coverage of two statutes). And, it is by no means clear that remediation is no longer possible, even at this date. As the court noted in *Grant County*, the administrative process "may have in-kind services and resources available to it for assistance of students such as [K.H.] who have been aggrieved in some way by the system." 544

F.3d at 643; *see also Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 63 (1st Cir. 2002) (compensatory education is an available remedy even after graduation).

In presenting their futility arguments, plaintiffs rely extensively on the Sixth Circuit's decision in *Covington v. Knox County School System*, 205 F.3d at 912. In that case, plaintiff Berma Covington asserted claims under 42 U.S.C. § 1983 on behalf of her disabled son, Jason, alleging that the defendant school officials had used unlawful disciplinary measures against the child, including repeatedly locking him in a time-out room for several hours without supervision. *Covington*, 205 F.3d at 913. On this basis, plaintiff sought an award of money damages for the physical and emotional injuries suffered by her son as a result of these disciplinary measures. Although the complaint did not allege violations of the IDEA, defendants sought dismissal on the ground of failure to exhaust administrative remedies. The district court dismissed on this basis. The Sixth Circuit reversed, holding that exhaustion would have been futile in the circumstances. The court rejected the notion that Covington's "damages claim alone excuses her from exhausting her administrative remedies," citing the consensus among most courts that "a plaintiff seeking money damages is required to exhaust administrative remedies under the IDEA, even if money damages are not available under the IDEA or through the administrative process." *Id.* at 916 (citing cases). The court nevertheless held that exhaustion was not required in the "unique circumstances" of that case, including the facts that the injured child had already graduated from the special education school and that his injuries were wholly in the past and could only be compensated by damages. *Id.* at 917. The court then cited a number of cases, principally involving allegations of physical abuse by special education officials, in which the plaintiffs sought only retrospective relief. The court noted that in Jason's case, the condition creating the damage had ceased and no equitable relief could make him

whole. *Id.* at 917-18. In so ruling, the court distinguished its prior decision in *Doe v. Smith*, 879 F.2d 1340 (6th Cir. 1989), in which the court had held that parents may not avoid the state administrative process through the unilateral act of removing their child from public school.[4] 205 F.3d at 918.

In the opinion of this court, the present case is significantly dissimilar from *Covington* and is governed by *Grant County*. In the circumstances of this case, it would not have been futile for plaintiffs to have pursued administrative remedies before commencing this litigation. Unlike the "unique circumstances" prevailing in *Covington*, plaintiffs' claims do not arise from improper discipline, acts of physical abuse by school officials, or other discrete events lying solely in the past and only tangentially related to core educational concerns. Rather, plaintiffs complain about the School District's ongoing failure to provide K.H. with a FAPE, to accommodate her disability in ways that would have allowed her to benefit from educational and extracurricular activities, and to identify her as a child with a disability, as required by section 504. Unlike claims of physical abuse, the claims in this case fall within the heartland of the IDEA. This is the very basis on which the Sixth Circuit has itself distinguished *Covington*. In *Gean v. Hattaway*, 330 F.3d 758, 774 (6th Cir. 2003), the court explained that its holding in *Covington* "was based not upon the fact that plaintiff sought monetary damages, but on the fact that the IDEA did not provide a remedy for the type of harm allegedly suffered by plaintiff, which was more in the nature of a tort than a violation of a federal entitlement scheme." 330 F.3d at 774. In the present case, a focus on the "source and

_____

[4] Plaintiffs also rely heavily on *Mark H. v. Lemahieu*, 513 F.3d 922 (9th Cir. 2008). The issue in *Mark H.* was whether the IDEA *displaced* plaintiff's section 504 claims. The issue of exhaustion was not at issue in that case. 513 F.3d at 935 n.11. Defendants here do not argue that the IDEA preempts plaintiffs' section 504 claims. *Mark H.* is therefore completely inapposite.

nature" of the wrongs for which plaintiffs seek a remedy shows that they are completely educational in nature and do not resemble the tort-like injuries in *Covington*.

Under facts analogous to those presented in the present case (as opposed to the "unique circumstances" confronted by the court in *Covington*), many courts have required the exhaustion of administrative remedies under IDEA as a prerequisite to the bringing of claims under section 504 or other federal civil rights statutes.  For example, in *Frazier v. Fairhaven School Comm.*, 276 F.3d 52 (1st Cir. 2002), plaintiffs sought to recover money damages under section 1983 to compensate for a number of incidents throughout their daughter's high school years that allegedly resulted in a deprivation of her right to a FAPE.  Plaintiffs argued that exhaustion of remedies under IDEA would have been futile, because their claims were for money damages only, their daughter had already graduated, and the administrative process could no longer do anything "to ameliorate the bungling that marred her educational experience." 276 F.3d at 59-63.  The First Circuit nevertheless upheld dismissal of the section 1983 claims for failure to exhaust administrative remedies, rejecting plaintiff's contention that the usual advantages of the IDEA process cannot be realized where a party seeks a form of relief that lies outside the universe of available administrative remedies.

> Exhaustion is beneficial regardless of whether the administrative process offers the specific form of remediation sought by a particular plaintiff.  After all, the administrative process facilitates the compilation of a fully developed record by a factfinder versed in the educational needs of disabled children -- and that record is an invaluable resource for a state or federal court required to adjudicate a subsequent civil action covering the same terrain.

\* \* \* \*

> This result is all the more attractive when one considers the practical consequences of allowing the plaintiffs to pursue their section 1983 claim without first exhausting the IDEA's administrative process.  That course of action would allow plaintiff to bypass the administrative procedures merely by crafting her

complaint to seek relief that educational authorities are powerless to grant.  This would subvert not only the very existence of a mandatory exhaustion requirement but also the overall scheme that Congress envisioned for dealing with educational disabilities.

276 F.3d at 61-63.  Turning to plaintiffs' contention that exhaustion would be futile because their daughter had already graduated, the court disagreed on two grounds:

> First, even after graduation, compensatory education is an available remedy.  Second -- and more importantly -- the entire matter of timing is largely within a plaintiff's control.  The IDEA provides a comprehensive remedial scheme, and plaintiffs could have invoked it at any of several different points during [their daughter's] high school years.  It would be a hollow gesture to say that exhaustion is required -- and then to say that plaintiffs, by holding back until the affected child graduates, can evade the requirement.

276 F.3d at 63.

Similarly, in *Polera v. Board of Education*, 288 F.3d 478 (2d Cir. 2002), the court held that plaintiff Santina Polera's claims under the ADA and section 504 of the Rehabilitation Act arising from deficiencies in her education were subject to dismissal for failure to exhaust administrative remedies, despite (1) the absence of any claim brought under the IDEA, (2) Polera's request for compensatory damages that could not be awarded in the administrative process, and (3) Polera's graduation and complaints of only past, not ongoing, conduct.  Rejecting the first two arguments, the court stated:

> The IDEA is intended to remedy precisely the sort of claim made by Polera:  that a school district failed to provide her with appropriate educational services.  The fact that Polera seeks damages, in addition to relief that is available under the IDEA, does not enable her to sidestep the exhaustion requirements of the IDEA.  Where, as here, a full remedy is available at the time of injury, a disabled student claiming deficiencies in his or her education may not ignore the administrative process, then later sue for damages.  Therefore, we hold that, absent an applicable exception, Polera was required to exhaust her administrative remedies.

288 F.3d at 488.  The court then analyzed and rejected Polera's argument, in reliance on the Sixth

Circuit's decision in *Covington*, that administrative exhaustion would be futile because of her

graduation:

> Despite certain similarities between *Covington* and the instant case -- both Polera and
> the plaintiff in *Covington* had already graduated and complained of past, not ongoing,
> conduct -- Polera's claim is distinguishable from the "unique circumstances" of
> *Covington*. . . .  Although the Sixth Circuit focused on the fact that the plaintiff
> student had graduated, damages would have been the only adequate remedy even
> though he sought immediate relief at the time of the wrongdoing.  Nothing could
> "undo" the harm that he had suffered.  In contrast, had Polera pursued administrative
> procedures at the time of her alleged wrongdoing, she could have obtained the
> materials she needed and, perhaps, remedial tutoring or schedule adjustments to undo
> the effects of the wrong.  For Polera, unlike the plaintiff in *Covington*, a fully
> effective remedy was available at the time; she simply chose not to pursue it.

288 F.3d at 490; *see also S.E. v. Grant County Bd. of Educ.*, 522 F. Supp. 2d 826, 832-33 (E.D. Ky.

2007), *aff'd* 544 F.3d 633 (6th Cir. 2008) (rejecting claim that exhaustion would be futile because

parents had withdrawn their child from the school district).

The foregoing authorities persuade this court that none of the reasons advanced by

plaintiffs in favor of their futility argument withstand scrutiny.  The courts have unanimously

rejected the argument that parents' unilateral decision to remove a child from the defendant school

district renders exhaustion futile.  Likewise, the pursuit of monetary relief, which is not awardable

in IDEA proceedings, does not support a finding of futility.  Furthermore, the lack of complete

congruence between the section 504 scheme and proceedings under the IDEA is not dispositive.

Presumably, Congress knew that the proceedings and relief available under section 504 are not

completely identical to the IDEA process.  Nevertheless, in passing the Handicapped Children's

Protection Act of 1986, Congress expressly required section 504 plaintiffs, like plaintiffs asserting

section 1983 claims and claims under the ADA, to pursue administrative remedies under IDEA to

redress educational injuries.  Where, as here, plaintiffs' allegations implicate the core concern of the IDEA, namely, to identify the needs of disabled students and to ensure that they are provided with appropriate educational services, exhaustion of remedies under the IDEA is mandatory.  The court rejects plaintiffs' contention that exhaustion would be futile.

### D.    Lack of Adequate Notice

The Sixth Circuit recognizes a second exception to the exhaustion requirement, where "plaintiffs were not given full notice of their procedural rights under the IDEA."  *Covington*, 205 F.3d at 917.  A plaintiff cannot rely on this exception, however, where the undisputed facts show that the parents had actual notice of the availability of the IDEA process.  For example, in *Christopher W. v. Portsmouth School Comm.*, 877 F.2d 1089, 1097 (1st Cir. 1989), the court rejected the contention that plaintiff should be excused from the IDEA exhaustion requirement because the parents were not informed of the right to a due process hearing.  The court pointed out that the parents had retained an attorney early in the controversy and thus could not plausibly claim ignorance as to the appropriate procedures to be followed.  877 F.2d at 1097.  The Sixth Circuit cited *Christopher W.* with approval in *Donoho ex rel. Kemp v. Smith County Bd. of Educ.*, 21 F. App'x 293 (6th Cir. 2001).  In that case, despite an affidavit averring that the defendant school board failed to inform plaintiff's parent of her procedural rights, the court concluded that "no reasonable factfinder could find, based on the record, that [the parent] had no notice of her right to a due process hearing prior to filing her civil action." 21 F. App'x at 298; *see also Waterman v. Marquette-Alger Intermed. Sch. Dist.*, 739 F. Supp. 361, 369 (W.D. Mich. 1990) (rejecting exception to the

exhaustion requirement based on lack of notice where plaintiffs were represented by sophisticated counsel completely familiar with the specific provisions of the special education rules.).

In the present case, the record conclusively demonstrates that plaintiffs were on actual notice of their IDEA rights at least as early as May 20, 2005, when K.H.'s parents sent the school superintendent a written demand for a section 504 hearing and expressly invoked the procedures under the IDEA.  (*See* Def. Ex. C).  Later in the same year, plaintiffs' counsel invoked their right to a due-process hearing under the IDEA on the issue of compensation for the cost of a private evaluation.  Thus, at a time when K.H. was still a student in the Portage School District, plaintiffs and their counsel clearly had actual knowledge of their rights under the IDEA and, in fact, invoked them to a limited degree.  The record therefore establishes that plaintiffs had actual knowledge of their IDEA rights while K.H. was a student in the School District and that they could have invoked the IDEA process had they chosen to.

### Conclusion

For the foregoing reasons, the court concludes that 20 U.S.C. § 1415(l) requires plaintiffs to exhaust administrative remedies as a prerequisite to bringing their claims under section 504 of the Rehabilitation Act of 1973, as alleged in counts VII and VIII of their complaint. Plaintiffs' claims directly involve the adequacy of K.H.'s education in the Portage School District and fall within the core of IDEA concerns.  Plaintiffs have not established that exhaustion of remedies would be futile or any other recognized excuse to the exhaustion requirement.  Counts VII and VIII will therefore be dismissed without prejudice for failure to exhaust administrative remedies.

Dated:   February 2, 2009                    /s/  Joseph G. Scoville
                                                        United States Magistrate Judge